STEEGO CORPORATION,
et al., Plaintiffs,

v.

Earl C. RAVENAL, et al., Defendants.

CA No. 91–12280–T.

United States District Court,
D. Massachusetts.

June 28, 1993.

court are defendants' various motions to dismiss and for summary judgment.

Martha B. Sosman, Eileen M. Hagerty, Kern, Sosman, Hagerty, Roach & Carpenter, Boston, MA, John J. Lormon, Robert W. Ayling, Robert C. Longstreth, Robert H. Hayes, Gray, Cary, Ames & Frye, San Diego, CA, for plaintiffs.

Richard J. Medalie, Medalie & Ferry, Washington, DC, Nancy L. Brush, Albert F. Cullen, Jr., Cullen & Butters, Boston, MA, for Earl C. Ravenal and Richard Ravenal.

Ernest M. Ladeira, City of Fall River Law Dept., Fall River, MA, for City of Fall River.

## MEMORANDUM

TAURO, Chief Judge.

Plaintiffs, Steego Corporation ("Steego") and ECI Residuary Corporation ("ECI"), owners of an old mill site located at 649 Alden Road in Fall River, Massachusetts, sue the former owners and operators of the site and their legal representatives, heirs and beneficiaries, alleging that defendants caused the release of hazardous materials at the site. Counts I and II of plaintiffs' complaint seek response costs, indemnity and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675 and the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, Mass.Gen.L. ch. 21E, § 4.

On January 21, 1993, this court dismissed Counts III, IV and V of plaintiffs' complaint which sought damages for trespass, nuisance and unjust enrichment. Presently before the

I

*Background*

According to plaintiffs' first amended complaint, from approximately 1930 through approximately 1945, the site was owned by defendant City of Fall River. Thereafter, from approximately 1945 through 1968, the site was owned by defendant Cornell Corporation ("Cornell"), a company owned and operated by the Ravenal family: the father Alan, his wife Mildred, and their son defendant Earl.[1] In 1969, Cornell was liquidated and the site was transferred to both Earl and his brother, defendant Richard Ravenal, who jointly owned the site until 1974.

From approximately 1940 through 1974, Elbe File & Binder Company ("Elbe") operated a manufacturing facility on the site in which degreasing and plating operations were conducted. The materials used in such operations, which were disposed of and stored on the site, constitute "hazardous substances" as defined by 42 U.S.C. § 9601(14) and "hazardous materials" as defined by Mass.Gen.L. ch. 21E, § 2. Elbe was owned, managed, directed and/or controlled during this period by defendant Kaday Realty Corporation ("Kaday"), Alan, Mildred, Earl and Richard Ravenal.[2]

In 1968, plaintiffs' predecessor, Sterling Precision Corporation ("Sterling"), purchased the outstanding capital shares of Elbe from Alan, Mildred, Earl and Richard Ravenal and Kaday. Sterling then leased the site from Earl and Richard Ravenal to whom Cornell had transferred the site. In 1969, Earl Ravenal transferred his interest in the site to a trust for the benefit of his children, Cornelia, John and Rebecca. In 1974, Sterling purchased the site.

1. Alan was Treasurer, Chairman of the Board of Directors and a shareholder of Cornell. Mildred was President, Director and a shareholder of Cornell. Earl was Vice President, Assistant Treasurer and a shareholder of Cornell.

2. Alan Ravenal served as President, Treasurer, Director and shareholder of Elbe and as President, Secretary, Chairman of the Board of Directors and shareholder of Kaday. Mildred Ravenal served as Vice President, Director and shareholder of Elbe and as Vice President and Director of Kaday. Earl Ravenal served as President of Elbe and as President, Secretary, Treasurer, Director and shareholder of Kaday. Richard Ravenal served as Secretary and shareholder of Kaday. The Ravenal grandchildren, Cornelia and John Ravenal served as directors of Kaday.

In 1971, Mildred executed a will[3] and in 1981, Alan executed a will. Under both wills, the assets of the estates were distributed to the Ravenal sons, Earl and Richard, to the Ravenal grandchildren, Cornelia, John, and Rebecca, and to a charitable trust, the Alan M. and Mildred S. Ravenal Foundation (the "estate beneficiaries"). Plaintiffs now allege that at the time these wills were executed, CERCLA was in effect, a release of hazardous substances at the site had occurred and Alan and Mildred were liable for the costs of investigating and remediating environmental contamination at the site. The distribution of the assets, however, left the estates without sufficient funds either to meet their environmental liabilities or to pay their creditors, including plaintiffs.

In 1989, plaintiffs conducted a site investigation and discovered that hazardous substances had been released at the site from approximately 1940 through 1974. Plaintiffs notified the Massachusetts Department of Environmental Quality Engineering (now the Department of Environmental Protection ("DEP")) of the release of hazardous materials at the site. Plaintiffs claim that they have now expended $250,000 as part of the cleanup and expect that the total cost of cleanup will exceed $1 million.

## II

### Analysis

A. *Motion by Estate Executors to Dismiss and for Summary Judgment*

1. *Failure to state a claim*

■ Earl Ravenal, in his capacity as executor under the will of Alan and co-executor under the will of Mildred, and Richard Ravenal and Richard Levin, in their capacities as co-executors under the will of Mildred (the "estate executors") move to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim against them. Specifically, the estate executors contend that the first amended complaint refers to them only in the caption, in the "Parties" portion and in the headings of the six claims for relief against "All Defendants." They cite *Marvasi v. Shorty*, 70

F.R.D. 14 (E.D.Pa.1976) in support of the proposition that where the names of defendants appear only in the caption and the identification of the parties section of the complaint but nowhere else, dismissal is warranted. *Id.* at 23.

The facts of *Marvasi,* however, are distinguishable from those presently before the court. There, the complaint alleged that the defendants were a part of a conspiracy to deprive the plaintiff of medical and pension benefits, without supporting this conclusory allegation with factual averments. Here, the complaint does state factual averments to support a claim against the estate executors. Specifically, the complaint alleges that the estates are liable under CERCLA and that the distribution of the assets of the estates left the estates without sufficient assets to either meet its environmental liabilities, or to pay its creditors, including plaintiffs. Compl. ¶¶ 29, 32. The estate executors have, therefore, been made aware of the claims being asserted against them. Furthermore, the estate executors have responded to each allegation in the first amended complaint and have replied with various affirmative defenses, counterclaims and cross-claims.

Plaintiffs' claims against the estate executors are thus supported by factual averments and the estate executors' motion to dismiss on this basis is DENIED.

2. *Timeliness of claims*

The estate executors further argue that plaintiffs' claims are time-barred under the Rhode Island Probate Code. Under R.I.Gen.Laws § 33–11–5, claims against an estate must be filed within six months of the first publication of the will. If a creditor has failed to file his claim within that six-month period "by reason of accident, mistake or any other cause," the creditor may petition the Probate Court for leave to file the claim, and the claim will be paid out of the assets remaining in the hands of the executor at the time the petition is received. In addition, creditors may file suits directly against estate executors within two years from the date of the first publication. R.I.Gen.Laws § 33–

3. A First Codicil was made to this will in June 1973.

11–50. A creditor whose cause of action did not accrue within the six-month time period may file suit directly against the will's beneficiaries within three years of the first publication, or one year after the cause of action accrues. *Id.* § 33–13–15. After all of the assets of an estate have been distributed, the Probate Court is without jurisdiction to entertain claims. *Chatigny v. Gancz*, 84 R.I. 255, 258, 123 A.2d 140, 141 (1956).

The first publication of Mildred's estate occurred April 16, 1976 and the first publication of Alan's estate occurred October 7, 1982. Mildred's estate assets were distributed in 1980. Alan's estate assets were distributed in 1983. Plaintiffs became aware of the release at the site by March 1990, at the conclusion of the site investigation. Plaintiffs did not file their complaint until August 28, 1991 and did not move to amend their complaint to include the estate executors until February 13, 1992. Thus, under the Rhode Island Probate Code, the statute of limitations had already run.

■ This court finds, however, that CERCLA preempts the Rhode Island Probate Code statute of limitations due to "CERCLA's broad remedial purpose and Congress's expressed intent that those responsible for hazardous waste sites bear the cost of cleaning them up...." *United States v. Sharon Steel Corp.*, 681 F.Supp. 1492, 1496 (D.Utah 1987) (holding that CERCLA preempts a state statute where its effect was to limit the liability of a party Congress intended to hold liable for cleanup costs). *See also* 42 U.S.C. § 9613(f)(1) ("Such claims ... shall be governed by Federal law"); *Freudenberg–NOK Gen. Partnership v. Thomopoulos*, 34 Env't Rep.Cas. (BNA) 1461, 1991 WL 325290, 1991 U.S.Dist. LEXIS 19421 (D.N.H. Dec. 9, 1991) (holding that CERCLA preempts New Hampshire probate statute of limitations where a suit against an estate executor for contribution would otherwise be time-barred); *accord Soo Line R.R. Co. v. B.J. Carney & Co.*, 797 F.Supp. 1472, 1485 (D.Minn.1992).

Defendants next argue that since the estate assets have already been distributed, CERCLA cannot preempt the Rhode Island Probate Code. Defendants cite no case law in the probate context to support this assertion, but rather analogize to the law of dissolved corporations. *See United States v. Distler*, 741 F.Supp. 643 (W.D.Ky.1990) (refraining from imposing liability on a corporation nine years after it had wound down and had distributed all of its assets); *Sharon Steel*, 681 F.Supp. at 1498 (holding liable under CERCLA a dissolved corporation which had not yet distributed all of its assets). Even in that context, however, courts have been liberal in allowing CERCLA cases to proceed against corporations with no remaining assets. *See United States v. Northeastern Pharmaceutical & Chem. Co.*, 579 F.Supp. 823, 827 (W.D.Mo.1984), *aff'd in part, rev'd in part*, 810 F.2d 726 (8th Cir. 1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987) (holding a corporation liable under CERCLA even though all of its assets had been liquidated and the proceeds distributed to its shareholders).

The estate executors further assert that since plaintiffs did not file a timely claim, they cannot be considered creditors of the estate and hence are now barred from asserting any claims against the estate. *See Chatigny*, 84 R.I. at 258, 123 A.2d at 141. In support of this argument, the estate executors rely upon *City of Philadelphia v. Stepan Chemical Co.*, 713 F.Supp. 1491 (E.D.Pa. 1989). In *Stepan Chemical*, the plaintiff City notified the defendant corporation that it was seeking a contribution for cleanup costs. Instead of responding to this request, the president of the corporation transferred all of the company's stock to a trust in the name of his daughter in exchange for a lifetime annuity. Upon his death, the trustees of the trust liquidated the assets of the company and distributed them to the trust without giving any notice to the City. Two years later, the City filed an action against the president's estate and against the trustees of the trust alleging CERCLA liability. The court, applying the Pennsylvania Business Corporation Act, dismissed the action, finding that there was no debt due, nor a legal claim pending against the corporation at the time of liquidation and thus the City could not be considered a creditor of the corporation. *Id.* at 1493.

This court respectfully disagrees with the court's analysis and result in *Stepan Chemical.* As noted above, CERCLA preempts state laws which have the effect of limiting the liability of those who Congress intended to be responsible for cleanup costs. *See* § 9613(f)(1); *Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86, 91–92 (3d Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989) (holding that CERCLA preempts state caveat emptor law). This court, therefore, declines to apply Rhode Island probate law.

For the reasons stated above, the estate executors' motion for summary judgment is DENIED.

### 3. *Personal jurisdiction*

■■■ The estate executors further move to dismiss under Fed.R.Civ.P. 12(b)(2) on the grounds that this court lacks personal jurisdiction over them due to the fact that: (1) they do not reside in Massachusetts; (2) they do not maintain a place of business in Massachusetts; (3) they are not subject to the Massachusetts long-arm statute; and (4) they do not have the requisite minimum contacts with Massachusetts.

In general, a foreign executor is not subject to suit in Massachusetts in the absence of a statute. *Saporita v. Litner,* 371 Mass. 607, 614, 358 N.E.2d 809, 813 (1976). There are, however, exceptions to this rule, such as where a decedent leaves assets in the forum state or where an executor appears voluntarily in a law suit. *Id.* Furthermore, Massachusetts courts will permit personal jurisdiction over an executor where there would have been personal jurisdiction over the testator while he was still living. *Id.* at 618, 358 N.E.2d at 815; Mass.Gen.L. ch. 199A, § 9 (1990). *See also Moore v. Healy,* 745 F.Supp. 791, 793 (D.Mass.1990).

Here, both Alan and Mildred were former owners and operators of the site at issue in this litigation, and of Elbe, the operator of the manufacturing facility on the site. These contacts would clearly have been sufficient to permit a Massachusetts court to exercise jurisdiction over them while they were still living. *See* Mass.Gen.L. ch. 223A, § 3. Accordingly, there is personal jurisdiction over

the estate executors and their motion to dismiss on this basis is DENIED.

### B. *Richard Ravenal's Motion for Summary Judgment*

Plaintiffs assert that Richard Ravenal is a former owner or operator of the site and to the extent that he received assets from his parents' estates, he holds those assets in trust to meet the estates' environmental liabilities.

### 1. *Richard's ownership interest prior to 1969*

■■■ Richard alleges that Cornell was the sole former owner of the site prior to March 1969 in that neither Richard nor any other Ravenal defendant had any direct ownership interest in the site up to that time. In addition, he asserts that he was never an officer or director of Cornell. He further contends that Cornell had no authority over the handling or disposal of hazardous wastes at the site and thus he was not an operator.

Plaintiffs point out, however, that Richard became a major stockholder in Cornell in December 1968. Furthermore, he was the Secretary and a shareholder of Kaday, which was a shareholder of Elbe. Although these facts alone are inconclusive, there still remain material facts in dispute as to whether the Ravenal entities were so closely interrelated as to preclude Richard from relying on the corporate form to evade liability. *See John Boyd Co. v. Boston Gas Co.,* 775 F.Supp. 435, 441 (D.Mass.1991). Accordingly, Richard's motion for summary judgment on this basis is DENIED.

### 2. *The Indemnity provision of the Cornell–Elbe lease*

■■■ Richard admits that in 1969, he became a co-owner of the site until 1974 when Sterling purchased the site. Richard contends, however, that he is insulated from liability during that time period due to the indemnity clause within the Cornell–Elbe lease. The lease stated that Elbe as tenant agreed:

[T]o indemnify and save harmless the Landlord against and from any and all

claims ... arising from the conduct or management of, or from any work or thing whatsoever done in or about, the premises during the term of this lease, and will further indemnify and save the Landlord harmless against and from any and all claims arising during the term of this lease from any condition of the premises....

Defs' Ex. X at § 17.1.

Upon review, this court finds that the lease agreement lacks the clear language necessary to allocate CERCLA liability. The lease contains no language that refers to environmental-related liability and there is no evidence that the parties discussed contamination of the land or that extra consideration was paid for the release of any future-arising environmental liabilities. *See John Boyd Co. v. Boston Gas Co.*, 1992 WL 212231, *5, 1992 U.S.Dist. LEXIS 13088, *15 (D.Mass. Aug. 18, 1992), *aff'd, John S. Boyd Co. v. Boston Gas Co.*, 992 F.2d 401 (1st Cir. May 26, 1993). Accordingly, Richard's motion for summary judgment on this basis is DENIED and his contention that he should be awarded attorney's fees and costs pursuant to the indemnification provision of the lease is MOOTED.

### 3. *"Trust" theory*

█ Richard argues that as a beneficiary of the estates of Alan and Mildred, he cannot be said to hold the estates' assets in trust to meet the estates' environmental liabilities. He contends that plaintiffs' "trust fund" theory is one that is only applied to corporations, not estates or trusts. Other courts, however, have applied a "trust fund" theory in this context. *See Soo Line R.R.*, 797 F.Supp. at 1484–85 (allowing claims to proceed against estate beneficiaries and certain testamentary trusts of the deceased former president of a polluting corporation); *Bowen Engineering v. Estate of Reeve*, 799 F.Supp. 467 (D.N.J. 1992); *Freudenberg–NOK Gen. Partnership*, 1991 WL 325290, at *3–4, 1991 U.S.Dist. LEXIS 19421, at *5. Satisfied that the application of these holdings will permit recovery here as well, this court DENIES Richard's motion for summary judgment on this basis.

### 4. *Timeliness of claims*

Richard next asserts that the claims against him in his capacity as an estate beneficiary are time-barred by R.I.Gen.Laws § 33–13–15. As discussed in Section II(A)(2) above, CERCLA preempts the Rhode Island Probate Code.

Accordingly, Richard's motion for summary judgment is DENIED.

### C. *The Ravenal Foundation's Motion for Summary Judgment and to Dismiss*

#### 1. *"Trust" theory/timeliness of claims*

Plaintiffs allege that the Alan M. and Mildred S. Ravenal Foundation (the "Foundation") received assets from Alan's estate, and that it holds these assets in trust to meet the estate's environmental liabilities.

The Foundation argues in response that (1) the Foundation, as a beneficiary of Alan's estate, does not hold the estate assets in trust to meet the estate's environmental liabilities; and (2) plaintiffs' claims are time-barred by the Rhode Island Probate Code. This court has already determined above that the beneficiaries of Alan and Mildred's estates can be deemed to hold the estates' assets in trust to meet the estates' environmental liabilities, and that CERCLA preempts the Rhode Island Probate Code. Accordingly, the Foundation's motion for summary judgment is DENIED.

#### 2. *Personal jurisdiction*

The Foundation moves, in the alternative, to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. Plaintiffs argue that this court has personal jurisdiction over all of the defendants in this action because CERCLA provides for nationwide service of process. Plaintiffs also argue that the agent for service of process on the Foundation, Earl, is already before this court. In addition, plaintiffs argue that this court has personal jurisdiction over the Foundation because its income is derived solely from the Sterling stock acquired by Alan as a result of the sale of Elbe to Sterling in 1968. Furthermore, the Foundation's sole activity of

making charitable contributions includes Massachusetts recipients.

### a. Nationwide Service of Process under CERCLA

■ CERCLA provides in pertinent part as follows:

In any action *by the United States* under this chapter, process may be served in any district where the defendant is found, resides, transacts business, or has appointed an agent for the service of process.

42 U.S.C. § 9613(e) (emphasis added). As highlighted by the above portion, CERCLA's provision for nationwide service is only made applicable to suits brought on behalf of the United States, and not on behalf of private litigants, as is the case here. *See Erman v. Lox Equip. Co.*, 1993 WL 393343, *3, 1992 U.S.Dist. LEXIS 13640, *2 (N.D.Cal. Aug. 19, 1992); *Waste Management of Wis., Inc. v. Uniroyal, Inc.*, 1992 WL 227379, *5, 1992 U.S.Dist. LEXIS 12003, *12 (W.D.Wis. June 2, 1992). Accordingly, this court rejects plaintiffs' argument that the court has personal jurisdiction over all the defendants based on CERCLA's provision for nationwide service of process.

### b. Jurisdiction over the trustee

■ Plaintiffs next argue that this court has jurisdiction over the Foundation due to the fact that Earl, as trustee of the Foundation, is already before this court. In determining whether a court has personal jurisdiction over a party, it is necessary to determine jurisdiction as to the party in each capacity he or she is being sued. *See, e.g., Feeney v. Feeney*, 335 Mass. 534, 140 N.E.2d 642 (1957) (allowing suit to proceed against defendant in her capacity as ancillary executrix, but dismissing suit against defendant in her individual capacity). Plaintiffs have not argued that this court has personal jurisdiction over Earl in his capacity as trustee of the Foundation, but merely assert that he is already before the court. Accordingly, plaintiffs' argument that the court has personal jurisdiction over the Foundation merely because Earl is already before the court is rejected.

### c. Personal jurisdiction over a foreign defendant

■ Under Massachusetts law, a court has personal jurisdiction over a foreign defendant if the jurisdiction is authorized by a state statute or rule and due process concerns are respected. *See United Elec., Radio and Mach. Workers of America v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1086 (1st Cir.1992). The Massachusetts long-arm statute provides in pertinent part as follows:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;

(b) contracting to supply services or things in this commonwealth;

(c) causing tortious injury by an act or omission in this commonwealth;

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;

(e) having an interest in, using or possessing real property in this commonwealth; ....

Mass.Gen.L. ch. 223A, § 3. The Foundation argues that it does not have the requisite minimum contacts with Massachusetts to confer personal jurisdiction. The Foundation was organized under the laws of Rhode Island where Alan's estate was probated. Furthermore, its principal place of business has always been in the District of Columbia, where its trustee, Earl, resides. Plaintiffs argue in response that this court may exercise personal jurisdiction over the Foundation based on the fact that: (1) the Foundation is funded solely with Sterling stock obtained by Alan when he sold Elbe to Sterling in 1968; and (2) the Foundation makes donations to charitable institutions in Massachusetts.

■ This court rejects plaintiffs' first argument because the Massachusetts long-arm

statute does not provide that the distant origin of a trust's assets be considered a "contact" with the state for jurisdictional purposes. Furthermore, plaintiffs have not provided any alternative authority to support this argument.

The court will consider plaintiffs' second argument in light of the "minimum contacts" test under Massachusetts law. In general, Massachusetts courts recognize two types of personal jurisdiction: specific and general. Specific jurisdiction exists where the litigation stems directly from the defendant's forum-based contacts. *United Elec.,* 960 F.2d at 1088. General jurisdiction exists where the cause of action does not directly stem from the activities of the defendant in the forum state, but the defendant has otherwise "engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Id.* Here, it is clear that this suit does not arise from the Foundation's practice of making donations in Massachusetts and thus specific jurisdiction does not exist. Furthermore, this court finds that the Foundation's donation practice does not constitute "continuous and systematic activity" in Massachusetts to confer general jurisdiction. *See Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1983) (holding that defendant's contacts of sending its chief executive officer to Houston for a negotiating session, accepting checks drawn on a Houston bank, purchasing helicopters, equipment and training services from a Fort Worth helicopter company and sending personnel to the helicopter company's facilities in Fort Worth for training were insufficient contacts to permit a Texas court to exercise personal jurisdiction over the defendant).

Concluding that the Foundation's practice of making donations to charitable causes in Massachusetts does not constitute sufficient "minimum contacts" to confer personal jurisdiction over the Foundation, the Foundation's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction is ALLOWED.

### D. *The Grandchildren, Cornelia, John and Rebecca Ravenal's Motion for Summary Judgment and to Dismiss*

Plaintiffs assert that Cornelia, John and Rebecca, the grandchildren of Alan and Mildred Ravenal (the "grandchildren"), are liable as former owners and operators of the site and as beneficiaries of the estates of their grandparents.

#### 1. *"Trust" theory/timeliness of claims*

The grandchildren argue that they cannot be held liable as beneficiaries of their grandparents' estates because: (1) they cannot be deemed to hold any of the estate assets in trust for plaintiffs; and (2) plaintiffs' claims are time-barred by the Rhode Island Probate Code. The court has already determined above that the beneficiaries of Alan and Mildred's estates can be deemed to hold the estates' assets in trust to meet the estates' environmental liabilities, and that CERCLA preempts the Rhode Island Probate Code. Accordingly, the grandchildren's motion for summary judgment on these bases is DENIED.

#### 2. *"Innocent landowner" defense*

The Ravenal grandchildren contend that they are protected from CERCLA liability because they were "innocent landowners." In order to avoid CERCLA liability under the "innocent landowner" defense, a defendant must prove each of the following elements of 42 U.S.C. § 9607(b)(3):

1. The release or threat of release of a hazardous substance and the resulting damages were caused solely by an act or omission of a third party;

2. The third party's act or omission did not occur in connection with a *contractual relationship* (either direct or indirect) with the defendants;

3. The defendants exercised due care with respect to the hazardous substance; and

4. The defendants took precautions against the third party's foreseeable acts or omissions and the foreseeable consequences resulting therefrom.

*United States v. Pacific Hide & Fur Depot, Inc.,* 716 F.Supp. 1341, 1346–47 (D.Idaho 1989) (emphasis added). The term "contractual relationship" as it is referred to above is defined as follows:

> The term "contractual relationship" . . . includes, but is not limited to, land contracts, deeds or other instruments transferring title or possession, *unless the real property on which the facility concerned is located was acquired by the defendant after the disposal or placement of the hazardous substance on, in, or at the facility,* and one or more of the circumstances described in clause (i), (ii), or (iii) is also established by the defendant by a preponderance of the evidence:
>
> > (i) At the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in, or at the facility.
> >
> > (ii) The defendant is a government entity which acquired the facility by escheat, or through any other involuntary transfer . . .
> >
> > (iii) The defendant acquired the facility by inheritance or bequest.

42 U.S.C. § 9601(35)(A) (emphasis added).

██ Here, the grandchildren can show that the release was caused solely by an act or omission of a third party. The grandchildren, however, received their interest in the property by means of an "instrument transferring title or possession," which is a "contractual relationship." They are, therefore, barred from asserting the "innocent landowner" defense unless the property "was acquired by the defendant after the disposal or placement of the hazardous substance," which is not the case here. The grandchildren obtained ownership in the land in 1969 and the release occurred through 1974. The grandchildren are thus barred from asserting the "innocent landowner" defense. *See Pacific Hide & Fur Depot,* 716 F.Supp. at 1349–50 (holding that the innocent landowner defense "is only applicable where ownership occurred after the disposal").

For the reasons stated above, the grandchildren's motion for summary judgment as to the "innocent landowner" defense is DENIED.

### 3. *Personal jurisdiction*

██ The grandchildren move, in the alternative, to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. This court finds that personal jurisdiction does exist over the grandchildren by virtue of the fact that Cornelia, John and Rebecca owned an interest in the contaminated site at issue; Cornelia, John and Rebecca each received assets from profits of the operations of Elbe on the site; and Cornelia and John were directors of Kaday which had its principal place of business in Fall River. Accordingly, the grandchildren's motion to dismiss for lack of personal jurisdiction is DENIED.

### E. *Defendants' New Motion for Summary Judgment*

██ In defendants' newest motion for summary judgment, they contend that since Earl, Alan and Mildred served as officers and directors of Elbe, which Steego acquired in 1968, Steego is required to indemnify defendants under Steego's by-laws. Steego's by-laws provide in pertinent part as follows:

> The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (*other than an action by or in the right of the Corporation*) by reason of the fact that he is or was a director, officer, employee or agent of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines, and amounts paid in settlement actually and reasonable [sic] incurred by him in connection with such action. . . .

Defs' Ex. RX13, Art. V, § 1 (emphasis added).

The indemnification provision set forth above excludes from coverage an action by or in the right of the corporation such as this

one, where Steego is the plaintiff.[4] Accordingly, defendants' newest motion for summary judgment is DENIED and their accompanying motion for expenses and attorneys' fees is MOOTED.

### III

*Conclusion*

The motions for summary judgment and to dismiss submitted on behalf of the estate executors, Richard Ravenal, Cornelia, John and Rebecca Ravenal and the newest motion for summary judgment submitted on behalf of all the Ravenal defendants are hereby DENIED. The Ravenal Foundation's motion to dismiss for lack of personal jurisdiction is hereby ALLOWED.

---

4. Defendants contend that this suit was actually brought by the Massachusetts DEP, and plaintiffs are merely seeking contribution for a settlement made with the DEP. This argument, however, is without merit as the suit was brought by Steego and the issue of a "threatened" suit by the DEP is not before the court.