**CITY OF PHILADELPHIA**

v.

**STEPAN CHEMICAL COMPANY, et al.**

**CITY OF PHILADELPHIA**

v.

**CONGOLEUM CORPORATION, et al.**

Civ. A. Nos. 81–0851, 83–5493.

United States District Court, E.D. Pennsylvania.

May 1, 1989.

Thomas Wamser, Chief Asst. City Sol., Philadelphia, Pa., for plaintiff.

Antoinette Stone, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for Nathan Auritt and Riva Snyderman, Trustees.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Before me is the motion for summary judgment of defendants Nathan Auritt and Riva Snyderman, trustees of the Sarah Kate Neuman Trust. Plaintiff, the City of Philadelphia, contends that the trust is the "successor-in-interest" to Eastern States Paint and Varnish Company, a former Pennsylvania corporation which allegedly "generated hazardous waste which was illegally deposited on the Enterprise Avenue landfill," Am.Compl. at 4, a parcel of land owned by the City. The City seeks response costs and consequential damages from Auritt, Snyderman, and the other named defendants pursuant to the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S. C. §§ 9601–9657. Defendants submit that as a matter of law, they are not liable under CERCLA for the alleged acts or omissions of Eastern States. For the reasons set forth below, I will grant defendants' motion and enter judgment in their favor and against the City.

## FACTS

The following facts are undisputed. In November, 1978, the City began an investigation into the illegal disposal of hazardous wastes at the Enterprise Avenue landfill. During the course of its investigation, the City came to suspect that some of the hazardous wastes had originated at Eastern States. The City wrote to Eastern States twice in 1979 to inform it that drums bearing its name had been uncovered at the Enterprise Avenue landfill and to request information concerning its disposal contracts and the chemical makeup of its wastes. In May, 1980, the City wrote to Isadore Neuman, president and sole shareholder of Eastern States, stating its belief "that a significant quantity of the waste" deposited at the landfill had originated at Eastern States, Plf's Resp. at Exh. C, and seeking a commitment from the company to contribute a percentage of the cleanup costs. Neither Eastern States nor Neuman ever responded to these letters.

In March, 1979, Neuman executed an indenture of trust, creating the Sarah Kate

Neuman Trust, with his daughter as the sole beneficiary. Neuman executed a private annuity agreement in January, 1981, transferring all the stock of Eastern States to the trust in exchange for a lifetime annuity. Neuman died before any payments became due under the annuity agreement. In December, 1981, the trustees of the trust liquidated the assets of Eastern States and distributed them to the trust. Two years later, in November, 1983, the City filed an action against the Estate of Isadore Neuman alleging CERCLA successor liability for the alleged dumping of hazardous wastes by Eastern States. The estate's motion to dismiss was granted, and in October, 1986, the City filed an amended complaint naming the trustees of the Sarah Kate Neuman Trust as covered persons under CERCLA, 42 U.S.C. § 9607(a)(3).

## DISCUSSION

### I. *The City is Not a Creditor of Eastern States*

The City claims that the trustees of the Sarah Kate Neuman Trust are liable as the "beneficiaries of the liquidation" of Eastern States, *see* Plf's Resp. at 2, for the acts of Eastern States which allegedly implicate sections 107(a)(3) and (4) of CERCLA.[1] The City contends that Eastern States violated several sections of Pennsylvania's

---

**1.** Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), states in pertinent part:
(3) [A]ny person who by contract, agreement, or otherwise arranged ... for transport for disposal or treatment, of hazardous substances ...
(4) ... from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for ...
(B) ... necessary costs of response incurred by any other person consistent with the national contingency plan.

**2.** Technically, "winding up" refers to preparations before voluntary dissolution; however, articles of dissolution have never been filed on behalf of Eastern States. *See* Dfts' Reply at 2. The trustees' liquidation of the corporation in December, 1981, was, in effect, a dissolution since the corporation was left devoid of assets; hence, the notice provisions of 15 P.S. § 2104 apply as to creditors of Eastern States. *See Robar Dev. Corp. v. Minutello,* 268 Pa.Super. 406, 408 A.2d 851, 853 (1979).

**3.** Section 1002 of Title 15 of the Business Corporation Law, which defines words and phrases used in the act, does not provide a definition for

Business Corporation Law, 15 P.S. § 1001, *et seq,* which set forth procedures for "winding up" before dissolution,[2] including notice to known creditors and claimants, *id.* at § 2104(B), and satisfaction of outstanding corporate liabilities, *id.* at 2104(C), and which prohibit the transfer of corporate assets in fraud of corporate creditors, *id.* at § 1311. Based on the alleged failure of Eastern States to "wind up" its affairs and to distribute its assets properly, the City seeks to have the transfer of assets to the trust voided so it can pursue the trustees for the response costs for which it believes Eastern States is liable.

The City attempts to portray itself as a corporate creditor of Eastern States; however, there was no debt due the City by Eastern States at the time of liquidation, nor was there any legal claim pending against it.[3] The City did not turn itself into a creditor of Eastern States by requesting that the company contribute to the cost to cleanup the Enterprise Avenue landfill. Although the City cites persuasive authority for the proposition that stockholders may be charged with notice of a contingent liability where no debt is currently owed, *see United States v. Seyler,* 142 F.Supp. 408, 410 (W.D.Pa.1956); *Robar*

---

the phrase "creditors and claimants." Section 1 of Pennsylvania's Uniform Fraudulent Conveyance Act, 39 P.S. § 351, broadly defines "creditor" as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent." This definition appears to incorporate both the "creditor" and the "claimant" addressed in the Business Corporation Law. At the time Eastern States was liquidated, the City had presented Eastern States with no more than general allegations concerning the company's responsibility for the damage at the Enterprise Avenue site. *See* Plf's Resp. at Exhs. A–C. The City has referred me to no cases—and my research has uncovered none—in which one party's allegations transformed it into a creditor of the one against whom the allegations were made. Although the Uniform Fraudulent Conveyance Act does not define "claim" as it is used to describe "creditor," I find that the legislature did not intend for mere allegations to constitute a claim, absent some legal foundation, such as an underlying debt, a contract, or a lawsuit properly filed and served.

*Dev. Corp. v. Minutello,* 268 Pa.Super. 406, 408 A.2d 851, 853 (1979), the City's letters to defendants did not constitute such notice.

■ In *Seyler,* the court held that defendant stockholders were liable for the company's unpaid federal income taxes where they had distributed dividends rendering the company insolvent several months before the taxes were assessed. 142 F.Supp. at 410. At the time of the dividend distributions, the corporation had received substantial taxable income for which the income tax had not been paid. Although the tax did not accrue until after the date of distribution, defendants were charged with notice of the subsequent liability since annual tax assessments had been rendered inevitable by the Internal Revenue Code. *See id.* CERCLA liability, however, is not analogous to tax liability. The City has pointed to no authority that charges a defendant corporation with notice of CERCLA liability absent service of a complaint. Since no CERCLA action had been filed against Eastern States or against the trustees of the Sarah Kate Neuman Trust at the time of liquidation, the City was not a "creditor" or a "claimant" of Eastern States. The trustees had no duty to notify the City of its "winding up" proceedings, 15 P.S. § 2104(B), and had no concurrent obligation to set aside funds on behalf of the City, *id.* at § 2104(C). It follows that the transfer of corporate assets to the trust could not have been in fraud of the City. *Id.* at § 1311.

*Robar* is also distinguishable from the case before me. The defendants in *Robar,* shareholders of an insolvent corporation who had distributed all of the corporation's assets to themselves, were found liable to plaintiff, the corporation's lessor, in light of an ongoing lease agreement between the corporation and plaintiff which had not expired at the time of distribution. Although the corporation's debt had not matured at the time of distribution, defendants were treated as creditors of the lessor since they had knowledge of the contract between the corporation and plaintiff. 408 A.2d at 853. The City has not alleged that Eastern States was bound by any agreement to contribute to the cost to cleanup the Enterprise Avenue landfill. The City's letters did not create a contract between the City and Eastern States; hence, the trustees were not required to retain sufficient assets in the corporation in the event the City decided to sue it some day.

Neither *Seyler* nor *Robar* support the City's contention that "[I]t is immaterial that this suit had not been brought at the time of liquidation." Plf's Resp. at 5, n. 4. If I were to adopt the City's analysis, it would logically follow that no business incorporated in Pennsylvania could voluntarily dissolve and distribute its assets without first notifying every party who had ever requested compensation from or threatened litigation against it. Furthermore, following dissolution, shareholders seeking distribution would be compelled to reserve a substantial pool of assets in the event that one of these "claimants-in-waiting" actually filed suit. Common sense tells me that few, if any, corporations could successfully dissolve without waiting many years to distribute their assets. There is nothing to suggest that the Pennsylvania legislature intended when drafting the Business Corporation Law to inhibit the alienability of corporate assets in this fashion.

■ The City has not alleged that Eastern States' stock was fraudulently conveyed to the trust in January, 1981, or that the trustees attempted to defraud it when they liquidated the corporation's assets and distributed them to the trust later that year. Indeed, it is unlikely that the City could support a claim of fraudulent conveyance under the Uniform Fraudulent Conveyance Act, 39 P.S. § 351, *et seq.* The trustees were not put on notice of a claim charging Eastern States with CERCLA violations until at least two years following liquidation.[4] While section 4 of the Act

---

**4.** It is unnecessary for me to decide whether the trustees were put on notice of the City's CERCLA action implicating Eastern States when suit was filed against the Estate of Isadore Neuman in 1983, or when the trustees were served with a complaint in 1986. What is relevant is that the

creates a presumption of fraud where a conveyance renders the transferor insolvent, *id.* at § 354, that section only protects creditors existing at the time of conveyance. *County of Butler v. Brocker*, 455 Pa. 343, 314 A.2d 265, 268 (1974); *Baker v. Geist*, 457 Pa. 73, 321 A.2d 634, 636 (1974). Section 7 applies to "present or future creditors," *id.* at § 357; however, in order to establish a fraudulent conveyance under section 7, the City must prove that Isadore Neuman possessed an actual intent to defraud the City, *id.* The City has made no such averment.

## II. *The Trust is Not Liable as Eastern States' Successor*

Although the City referred to the Sarah Kate Neuman Trust as the "successor-in-interest" to Eastern States in its complaint, Am.Compl. at 4, in its response to defendants' motion for summary judgment, it does not pursue this theory of recovery. Nonetheless, I will briefly discuss why successor liability fails as an alternative argument.

It is well-settled under Pennsylvania law that when one company sells or transfers all of its assets to another, the transferee does not become liable for the debts and liabilities, including torts, of the transferor. *Polius v. Clark Equipment Co.*, 802 F.2d 75, 77 (3d Cir.1986). There are, however, four generally recognized exceptions to this rule of non-liability. The transferee may be held liable where: (1) it expressly or impliedly assumes the obligations of the transferor; (2) the transaction amounts to a consolidation or a *de facto* merger; (3) the transferee is a mere continuation of the transferor; or (4) the transaction is fraudulent and intended to escape liability. *Id.* at 78; *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308–09 (3d Cir.1985).[5]

There is no evidence that the trustees ever agreed—either expressly or impliedly—to assume the obligations of Eastern States. There was no "*de facto* merger" since the trust is an interest in property, not a corporate entity. The trust is clearly not a continuation of Eastern States since it is not in the business of manufacturing paint and varnish. Finally, there has been no allegation that either Neuman or the trustees intended to defraud the City. *See supra* pp. 1494–1495. It follows that the trust is not liable as the "successor-in-interest" to Eastern States since no exception to the rule of non-liability applies to the transfer of assets from the company to the trust.

## CONCLUSION

The City is not a corporate creditor of Eastern States; therefore, it cannot have the transfer of assets from Eastern States to the Sarah Kate Neuman Trust voided. The City cannot pursue the assets of the trust under a successor liability theory. An order follows.

---

notice antedated the liquidation of the company's assets.

**5.** There is a fifth exception to the general rule of non-liability known as the "product line exception." The product line exception was adopted by the Pennsylvania Superior Court in *Dawejko v. Jorgenson Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106, 108 (1981), although the Pennsylvania Supreme Court has yet to decide whether it is

the law of Pennsylvania. According to the product line exception, a transferee can be held liable for the torts of the transferor if it undertakes essentially the same manufacturing operation as the transferor. The product line exception does not apply to the trustees since the trust, as the transferee of the assets of Eastern States, does not engage in the manufacture of paint or varnish.