**UNITED STATES of America, and State of Indiana, Plaintiffs,**

v.

**SCA SERVICES OF INDIANA, INC., Defendant.**

**SCA SERVICES OF INDIANA, INC., Third–Party Plaintiff,**

v.

**OMNISOURCE CORPORATION, et al., Third–Party Defendants.**

Civ. No. 1:89cv29.

United States District Court, N.D. Indiana, Fort Wayne Division.

Nov. 10, 1993.

---

Percy Angelo, Patricia F. Sharkey, Kurt D. Williams, Thomas W. Dimond, Mayer Brown and Platt, Chicago, IL, for SCA Services of Indiana, Inc., third-party plaintiff.

Edmund B. Moran, Jr., Chicago, IL, for Levin & Sons, Inc., third-party defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on the motion of Levin and Sons, Inc. ("Levin"), a third-party defendant, to dismiss the complaint of SCA Services of Indiana, Inc. ("SCA"), the third-party plaintiff, or, in the alternative, for summary judgment. As the parties have both submitted materials outside of the pleadings, the court will consider the motion to be solely a request for summary judgment.

### Summary Judgment

█ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252, 106 S.Ct. at 2512; In Re Matter of Wildman, 859 F.2d 553, 557 (7th Cir.1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir.1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir.1992) (quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

█ Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. Goka v. Bobbitt, 862 F.2d 646, 649 (7th Cir.1988); Guenin v. Sendra Corp., 700 F.Supp. 973, 974 (N.D.Ind.1988); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 477 U.S. at 249–251, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in

such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

 Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512.

### Discussion

SCA filed its third-party complaint against numerous third-party defendants on September 11, 1992. On November 23, 1992, SCA filed its first amended complaint, and on September 9, 1993 SCA filed its second amended complaint. SCA brought its third-party action

> to recover the costs of response it has incurred and will incur pursuant to the Consent Decree approved in this matter by this Court on July 18, 1989, and to obtain contribution pursuant to the provisions of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601, *et seq.* (CERCLA), as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), P.L. 99–499, 42 U.S.C. § 9607, in connection with the release or threat of a release of hazardous substances at a site located in Allen County, Indiana, referred to as the "Fort Wayne Reduction Site" (or the "Facility").

Second Amended Third–Party Complaint at ¶ 1.

SCA has alleged that Levin and Superior Companies, Inc. owned and/or operated the Facility directly and/or through their control of National Recycling Corporation as a waste disposal and/or treatment facility between approximately 1966 and 1973, during which time hazardous substances were disposed of at the Facility. Second Amended Third–Party Complaint at ¶ 21.

SCA's four claims for relief state as follows:

119. Each of the third party defendants are jointly and severally liable under section 107(a) of CERCLA, 42 U.S.C. § 9607(a) for the costs incurred and to be incurred by SCA, pursuant to the Consent Decree and in satisfaction of the claims made by the United States and the State of Indiana.

121. SCA is entitled to contribution, under section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), from each of the third party defendants for the costs incurred and to be incurred by SCA pursuant to the Consent Decree and in satisfaction of the claims made by the United States and the State of Indiana.

123. SCA is entitled to a declaratory judgment, under section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), finding each third party defendant liable for costs and damages incurred and to be incurred by third party plaintiff in compliance with the Consent Decree and in satisfaction of the claims made by the United States and the State of Indiana in this action, and also for response costs and damages that may form the subject of any future action by or against SCA under section 107 of CERCLA, 42 U.S.C. § 9607, in connection with the Fort Wayne Reduction Site.

126. The Levin Assignment constituted a fraudulent conveyance within the meaning of Ind.Code Ann. § 32–[2]–1–14 (Burns 1980) such that: i) the Levin Assignment should be nullified or set aside, and ii) the funds transferred in connection with the Levin Assignment to Bessie Levy, Ralph Levin and Gabor Fenyes as Levin Trust-

ees for the Levin Trusts, and to Bessie Levy individually and as a beneficiary of trust B, should be returned to Levin or turned over to Third Party Plaintiff to satisfy any judgment or damages against Levin in this case.

Second Amended Third–Party Complaint at ¶s 119, 121, 123, 126.

Levin has requested summary judgment in this case on the basis that it is a dissolved corporation which is no longer subject to suit under CERCLA. Levin argues that before liability can attach under CERCLA, a defendant must be shown to be a "person" as that term is defined in § 101(21) of CERCLA. 42 U.S.C. § 9601(21). The term "corporation" falls within CERCLA's definition of "person". *Id.*

█ Rule 17(b) of the Federal Rules of Civil Procedure states: "The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." However, Levin argues that CERCLA preempts Rule 17(b) and, therefore, the statutory construction of CERCLA, rather than the laws of the state of incorporation, will determine whether a dissolved corporation can be sued. Unfortunately, CERCLA is silent as to whether a dissolved corporation and its distributees may be liable for response costs.

Levin has submitted the affidavit of Gabor Fenyes, a prior officer and director of Levin, which recites the following facts. Levin was incorporated in Indiana in 1946 and was in the business of scrap metal acquisition and recycling. Sam Levin was the principal shareholder of Levin until his death in 1983. Upon Sam Levin's death his ownership of 91% of the issued and outstanding shares of Levin passed to four testamentary trusts (the "Levin Trusts")[1]. Fenyes Aff. at ¶ 2–4.

On June 16, 1987, Levin entered into a purchase and sale agreement with Omni-Source Corporation ("OmniSource"). Pursuant to this agreement Levin was to sell to OmniSource all of the remaining assets of Levin for various considerations passing from OmniSource to Levin. As a result of the agreement, Levin no longer held any physical assets and held only the consideration granted to it by OmniSource. Fenyes Aff. at ¶ 5.

On June 25, 1987, Levin's board of directors passed a resolution adopting a plan of complete liquidation in the form of a written resolution dated July 20, 1987. Also on June 25, 1987, the shareholders of Levin adopted a resolution consenting to and approving the liquidation in accordance with the plan adopted by the board of directors. Shortly thereafter, Levin filed IRS Form 966 ("Corporate Dissolution of Liquidation") with the Internal Revenue Service. Fenyes Aff. at ¶ 6–8.

On August 24, 1988, Levin executed an assignment of the June 16, 1987 purchase agreement between Levin and OmniSource. This assignment resulted in the transfer of all of Levin's right, title, and interest under the OmniSource purchase and sale agreement to various persons, including the co-trustees of the Levin Trusts. Thereafter, Levin purportedly ceased doing any further business. On November 14, 1990, a certificate of administrative dissolution of Levin was subscribed by the Indiana Secretary of State. Fenyes Aff. at ¶ 9–11.

In its brief in support of its motion for summary judgment, Levin points out that SCA seeks to sue Levin five years after the adoption of a plan of liquidation, four years after all its remaining assets had been distributed to its shareholders, and nearly two years after the corporation was administratively dissolved by the Indiana Secretary of State. Levin thus argues that it is no longer amenable to suit as it was a "dead and buried" corporation at the time that SCA initiated its third-party suit on September 11, 1992[2].

SCA, however, strongly opposes Levin's motion for summary judgment. SCA argues that Levin is amenable to suit under both

---

1. The other 9% of the Levin shares were owned by Bessie Levy, Sam Levin's sister. Fenyes Dep. at 10.

2. Paragraph 12 of the Fenyes Affidavit states that the office of the Sam Levin Trust received a summons and a copy of SCA's third-party complaint "several days following October 19, 1992."

Indiana law and CERCLA and, moreover, Levin's August 24, 1988 assignment of virtually all of Levin's assets to the Levin Trusts was in defraud of creditors within the meaning of Indiana's fraudulent conveyance law[3]. SCA claims that, even accepting the Fenyes affidavit as true, the affidavit does not aver that Levin filed articles of dissolution with the office of the Indiana Secretary of State, as provided for by Indiana law[4]. Nor does the affidavit aver that Levin notified the public or creditors of its dissolution, as also provided for by Indiana law[5]. SCA contends

3. I.C. § 32–2–1–14 provides that:

All conveyances or assignments, in writing or otherwise, of any estate in lands, or of goods or things in action, every charge upon lands, goods or things in action, and all bonds, contracts, evidences of debt, judgments, decrees, made or suffered with the intent to hinder, delay or defraud creditors or other persons of their lawful damages, forfeitures, debts or demands, shall be void as to the persons sought to be defrauded.

4. I.C. § 23–1–45–3 provides that:

(a) At any time after dissolution is authorized, the corporation may dissolve by delivering to the secretary of state for filing articles of dissolution setting forth the following:
(1) The name of the corporation.
(2) The date dissolution was authorized.
(3) If dissolution was approved by the shareholders:
 (A) the number of votes entitled to be cast on the proposal to dissolve; and
 (B) either the total number of votes cast for and against dissolution or the total number of undisputed votes cast for dissolution and a statement that the number cast for dissolution was sufficient for approval.
If voting by voting groups is required, the information required by this subdivision shall be separately provided for each voting group entitled to vote separately on the plan to dissolve.
(b) A corporation is dissolved upon the effective date of its articles of dissolution.

5. I.C. § 23–1–45–6 provides that:

(a) A dissolved corporation may dispose of the known claims against it by following the procedure described in this section.
(b) The dissolved corporation shall notify its known claimants in writing of the dissolution any time after its effective date. The written notice must:
(1) specify the amount that the dissolved corporation believes will satisfy the claim;
(2) inform the creditor that it has the right to dispute the amount of the claim and describe the procedure for disputing the amount of the claim;
(3) provide a mailing address where a dispute of the amount of the claim may be sent;
(4) state the deadline, which may not be fewer than sixty (60) days after the effective date of the written notice, by which the dissolved corporation must receive the dispute of the amount of the claim; and
(5) state that the claim will be fixed at the amount specified by the dissolved corporation if a dispute of the amount of the claim is not received by the deadline.
(c) If the amount of the claim is disputed, the claimant must notify the dissolved corporation of the dispute by the deadline. If the dissolved corporation rejects the disputed amount, the claimant must commence a proceeding to enforce the claim within ninety (90) days after the effective date of the dissolved corporation's rejection notice.
(d) The amount of the claim is fixed if:
(1) the claimant does not notify the dissolved corporation by the deadline; or
(2) the claimant who has notified the dissolved corporation of a dispute and has received a rejection notice does not commence a proceeding within ninety (90) days from the effective date of the rejection notice.
(e) Regardless of a dispute in the amount of the claim, the dissolved corporation must tender to the claimant the amount of the claim as set forth by the dissolved corporation in the notice of claim within thirty (30) days after the earliest of the following dates:
(1) The date that the claim becomes fixed.
(2) The date that the claimant commences the proceeding to enforce the claim.
(f) For purposes of this section, "claim" does not include a contingent liability or a claim based on an event occurring after the effective date of dissolution.
 I.C. § 23–1–45–7 provides that:
(a) A dissolved corporation may also publish notice of its dissolution and request that persons with claims against the corporation present them in accordance with the notice.
(b) The notice must:
(1) be published one (1) time in a newspaper of general circulation in the county where the dissolved corporation's principal office (or, if none in Indiana, its registered office) is or was last located;
(2) describe the information that must be included in a claim and provide a mailing address where the claim may be sent; and
(3) state that a claim against the corporation will be barred unless a proceeding to enforce the claim is commenced within two (2) years after the publication of the notice.
(c) If the dissolved corporation publishes a newspaper notice in accordance with subsection (b), the claim of each of the following claimants is barred unless the claimant commences a proceeding to enforce the claim within two (2) years after the publication date of the newspaper notice:
(1) A claimant who did not receive written notice under section 6 of this chapter.

that Levin simply let its corporate existence lapse, by failing to file an annual report in 1990, and accepted the resulting administrative dissolution without giving notice to anyone, either before or after the Indiana Secretary of State took action.

SCA further points out that Levin's purchase and sale agreement with OmniSource was entered into a full year after Levin began receiving inquiries from the United States Environmental Protection Agency ("USEPA") about problems at the Fort Wayne Reduction Site, while Levin's assignment transferring its assets to the Levin Trusts took place more than two years after the USEPA's inquiries. SCA also notes that Levin's assignment of its assets to the Levin Trusts occurred after the USEPA gave notices of the completion of the Remedial Investigation/Feasibility Study ("RI/FS") and the proposed Record of Decision ("ROD"), and after a May 11, 1988 public meeting in Fort Wayne regarding the proposed remedy.

SCA also contends that the assignment of assets to the Levin Trusts was not an arms-length transaction because the directors, officers, and shareholders of Levin and the trustees and beneficiaries of the Levin Trusts were, in substantial part, one and the same. SCA alleges that the assignment was made in the absence of any consideration or independent analysis by Levin's president, Bessie Levy (Sam Levin's sister).

Additionally, SCA alleges that the Fenyes affidavit at ¶ 10, wherein it states that Levin "ceased doing business" shortly after the assignment of assets, is patently false. SCA claims that the Levin Trusts continue to use Levin letterhead, to pay Levin utility bills, to use Levin purchase orders, and to pay off Levin debts. SCA concludes that it has put forth sufficient facts to indicate that the Levin corporation did not dissolve, but merely concocted a scheme to avoid CERCLA liabili-

ty by an improper transfer of its assets while it continued to conduct its business through the Levin Trusts.

## Analysis

The court agrees with SCA that since there is no conflict between Indiana capacity laws and CERCLA, the court need not rule on whether the Indiana laws are preempted by CERCLA. As recognized in *United States v. Sharon Steel Corporation,* 681 F.Supp. 1492, 1496 (D.Utah 1987), the rationale for CERCLA preemption of state capacity laws in some instances is to prevent the frustration of CERCLA's remedial scheme by more restrictive state laws. As the court stated: "[T]he court concludes that CERCLA's language ... clearly expresses Congress's intent to supersede any rule that would otherwise relieve a responsible party from liability." *Id.* As discussed below, under Indiana law Levin is still liable to its creditors, including SCA, as it did not give notice of its dissolution to its creditors and thus Indiana law does not conflict with CERCLA's remedial scheme.

It is abundantly clear to this court that Levin did not effect a proper voluntary dissolution. First, Levin has not disputed SCA's assertion that Levin failed to file a copy of its articles of dissolution with the Indiana Secretary of State as required by I.C. § 23–1–45–3 (see footnote 2, *supra*). Secondly, Levin has not disputed SCA's assertion that it did not give notice to its creditors as provided for in I.C. § 23–1–45–6 and § 23–1–45–7 (see footnote 3, *supra*). These provisions of Indiana law provide an opportunity for dissolving corporations to cut off claims of creditors by giving notice in the manner prescribed. Where no notice is given to creditors, claims of creditors are not subject to the two-year statute of limitations set forth in I.C. § 23–1–45–7(b)(3), (c).

(2) A claimant whose claim was timely sent to the dissolved corporation but not acted on.
(3) A claimant whose claim is contingent or based on an event occurring after the effective date of dissolution.
(d) A claim may be enforced under this section:
(1) against the dissolved corporation, to the extent of its undistributed assets; or

(2) if the assets have been distributed in liquidation, against a shareholder of the dissolved corporation to the extent of the shareholder's pro rata share of the claim or the corporate assets distributed to the shareholder in liquidation, whichever is less, but a shareholder's total liability for all claims under this section may not exceed the total amount of assets distributed to the shareholder.

Thus, Levin's attempted voluntary dissolution does not bar claims of creditors such as SCA.

■ Furthermore, even though it is undisputed that Levin was administratively dissolved for failure to file annual reports with the Secretary of State, administratively dissolved corporations continue their corporate existence but may not carry on any business except that necessary to wind up and liquidate the business and to notify claimants. See I.C. § 23–1–46–2(c). Thus, it is clear that Levin's administrative dissolution did not wipe out Levin's corporate existence and does not bar SCA's claims. In fact, I.C. § 23–1–45–5(b)(5) specifically provides that "[d]issolution of a corporation does not prevent commencement of a proceeding by or against the corporation in its corporate name."

■ In a case such as the one presently before this court in which a corporation has not properly dissolved pursuant to state law, this court holds that the corporation will always be amenable to suit under CERCLA. Levin has failed to take advantage of Indiana's two-year statute of limitations for creditor actions against dissolved corporations by failing to give notice of its dissolution to creditors as provided for by Indiana law. Therefore, even if Levin has distributed all of its assets, it is not a "dead and buried" corporation as it is still subject to suit by its creditors. It would defy simple logic for this court to hold that Levin, a corporation which can still be sued by its general business creditors, cannot be sued by a creditor proceeding under the federal CERCLA statute. A corporation is simply not "dead and buried" until it has fully complied with the applicable state dissolution laws and remains amenable to suit by its creditors.

In any event, even if the court were to disregard Indiana corporate law, the court would still find that Levin remains amenable to suit under CERCLA. CERCLA § 107(a), entitled in part "covered persons" sets forth four categories of "persons" who may be liable in a CERCLA action. CERCLA § 101(21) defines the term "person" to include a "corporation", without any regard to the corporation's current status. Neither "dissolution" nor "distribution" is one of the enumerated defenses to a CERCLA action listed in § 107(b), nor are either of the concepts mentioned anywhere else in CERCLA.

■ This court agrees with SCA and with the court in *Allied Corp. v. ACME Solvents Reclaiming,* 1990 WL 322940 (N.D.Ill.1990), that CERCLA allows suits against corporations without limitation as to whether the corporation is dissolved or its assets have been distributed. In *Allied,* the defendant corporation argued that it was a dissolved corporation that had distributed its assets and was therefore immune from CERCLA liability. The *Allied* court noted that "no qualifications or limitations are placed on the definition of the term 'corporation' in CERCLA" and "Congress has previously placed certain definitional limitations on the term 'corporation' in other remedial legislation such as the Sherman Act and could have done so in CERCLA had that been Congress' intent." *Id.* at 4. Thus, the *Allied* court held that "by its very nature CERCLA is intended to be both remedial and retroactive and provides for suit against a 'corporation' without regard to its current status." *Id.* at 5.

Levin has attempted to persuade this court to follow *United States v. Distler,* 741 F.Supp. 643 (W.D.Ky.1990). In *Distler,* the government argued that the corporation was subject to suit under state law, and therefore was subject to suit under CERCLA. However, the *Distler* court held that "[w]hether a corporation is liable under CERCLA is a question of federal law and cannot depend on the law of the state of incorporation which will vary from state to state." *Id.* at 646. The court then held that "there is no precedent for imposing [CERCLA] liability on a dissolved corporation nine years after it has wound down and distributed its assets." *Id.* at 647. The *Distler* court reasoned that CERCLA is a national remedy for a national problem and "Congress could not have intended that companies in identical positions be treated differently if they were incorporated in different states."

This court is not persuaded to follow the reasoning or the holding of *Distler*. First, as noted earlier, CERCLA does not define "corporation" to exclude dissolved corporations and Congress could have easily inserted a more limited definition of "corporation" if it had so desired. Secondly, corporations will not be held to different standards in different states. Each corporation is required to properly dissolve under its state laws before even attempting to argue that it is not amenable to suit by a CERCLA plaintiff. And finally, all corporations will be treated the same under the *Allied* approach, as all corporations, regardless of their current status, are amenable to suit under CERCLA.

The other cases cited by Levin are either not on point or are not persuasive. In *Sharon Steel, supra*, the defendant corporation was not amenable to suit under state law. The court held that CERCLA preempted state capacity laws (to the extent state laws shield a corporation from CERCLA lawsuits) and found the defendant corporation amenable to suit under CERCLA. The defendant corporation in *Sharon Steel* had properly dissolved under state law but had not yet distributed its assets. The court stated:

> The trust argues that the real issue here is whether the plaintiff can reach assets in the hands of the shareholders of a dissolved corporation. That may be the government's ultimate objective, but that issue is not before the court, and the court expresses no opinion on it. Nor is the court faced with a situation in which the corporation's assets have been fully distributed and its affairs completely wound up, that is, where the corporation is not only dead but also buried. Here, the funeral is still going on. Corporate assets that might be used to pay cleanup costs have not yet been distributed to shareholders. Under these facts, the court holds that CERCLA overrides the general capacity provisions of rule 17(b) to the extent the rule might otherwise shield a dissolved corporation from liability.

681 F.Supp. at 1498. Levin argues that the above excerpt evidences that the *Sharon Steel* court implied that it would hold that a corporation that *has* distributed its assets could not be sued under CERCLA. However, Levin's argument is fatally undermined by the *Sharon Steel* court's later acknowledgment that "the fact that a defendant may be judgment proof does not affect its capacity to be sued." *Id.*

In *Traverse Bay Area Int. School Dist. v. Hitco, Inc.*, 762 F.Supp. 1298, 1301 (W.D.Mich.1991), a case involving a corporation that had properly dissolved in accordance with Michigan law, the court held that "CERCLA actions against dissolved corporations must be permitted to proceed." The parties in *Traverse Bay* disputed whether the corporation's assets had been fully distributed to its former shareholders. The court stated that:

> The Court's determination of the scope of CERCLA liability must not turn on the collectibility of judgments. It is enough that CERCLA imposes liability on any "person" who owned or operated a facility at which hazardous substances were disposed and that corporations are included in the definition of "person." As the court in *Gilman* stated:
>
>> Any dissolved corporation that is a potential CERCLA defendant may have benefited from the cheap disposal of hazardous wastes. If the resources of these dissolved corporations are available, those resources should be available for cleanup and the party who benefited from the cheap disposal should be held responsible.
>
> *[Columbia River Service Corp. v.] Gilman*, 751 F.Supp. [1448] at 1453 [(W.D.Wash. 1990)].

Still the question whether [the dissolved corporation] still holds assets and whether it is a "person" under CERCLA are intertwined. Although an existing corporation is clearly a "person" under CERCLA, a non-existent corporation cannot be included within that definition. In such a case there is no entity to sue or to defend against a lawsuit, and any judgment entered by the court would be unenforceable, much less uncollectible. To use the *Gilman* court's analogy, although [the successor corporation] may have shown that [the dissolved corporation] is "dead", in order

to fulfill CERCLA's remedial goals, plaintiff is entitled to determine whether the corporation has been "buried." If it is established through discovery that [the dissolved corporation] holds no assets whatsoever, then it no longer exists. In that situation it is not a "person" under CERCLA and no lawsuit can be maintained against it.

762 F.Supp. at 1301–02.

■■■ This court declines to follow *Traverse Bay* because it disagrees with the statement that "[a]lthough an existing corporation is clearly a 'person' under CERCLA, a non-existent corporation cannot be included within that definition." Rather, this court agrees with Judge Roszkowski that

> Had Congress intended CERCLA to reach only corporations which were existing at the time of bringing of a lawsuit, Congress certainly could have expressed such an intent by specifically drafting CERCLA in that manner. For example, under the Sherman Act, 15 U.S.C. § 7, a "person" includes "corporations and associations existing under or authorized by the laws of ... any State."

*Allied,* at n. 4.

Levin has also cited *City of Philadelphia v. Stepan Chemical Co.,* 713 F.Supp. 1491 (E.D.Pa.1989), in support of its motion. However, *City of Philadelphia* is not relevant to the issues in the present case as the *City of Philadelphia* court did not have before it the question of whether a dissolved corporation was amenable to suit under CERCLA. Nor was the court asked to rule on the issue of whether CERCLA preempted Pennsylvania law. Rather, the court was only required to decide whether a non-fraudulently created trust could be held liable for CERCLA response costs. The court held that the trust could not be held liable because the transfer of corporate assets to the trust could not have been in fraud of the City as the trustees were not put on notice of a potential CERCLA claim until at least two years following the liquidation of the corporation's assets. *Id.* at 1494. Furthermore, the court held that the City was not a creditor of the corporation at the time the corporation dissolved and thus, under Pennsylvania law,

the corporation did not have a duty to notify the City of its proposed dissolution. *Id.* at 1493.

Similarly, in *T–K City Disposal, Inc. v. Commercial Union Insurance Company,* 761 F.Supp. 552 (N.D.Ill.1991), also cited by Levin, is not relevant to the case at bar. In *T–K City,* a dissolved corporation ("T–K") that had been sued for recovery of CERCLA response costs attempted to compel its former insurer to defend it against the CERCLA action. The defendant insurance company argued that T–K lacked capacity to bring suit. The court dismissed T–K's complaint ruling that "T–K also has not presented any authority and the court has discovered none which would permit T–K to maintain a suit under the guise of CERCLA long after it has been dissolved as a corporation." *Id.* at 555. Parenthetically, the court questioned whether the USEPA could maintain an action against a dissolved corporation, but as neither the issue nor the relevant party (the USEPA) was properly before it, the court did not discuss the question further. *Id.*

■■■ Even if this court were to accept Levin's legal arguments, summary judgment still would not be appropriate because there are genuine issues of material fact as to whether Levin has distributed all of its assets and whether Levin continues to conduct business. SCA has submitted evidence to this court that Levin continues to operate as a business through the Levin Trusts. SCA's exhibits indicate that Levin has maintained properties in its own name, purchased supplies in its own name, and is still paying off Levin debts (including CERCLA liabilities incurred by Levin at another Superfund site). Furthermore, as SCA points out, Levin could formally reestablish itself at any time by simply paying its past due fees and applying to the Secretary of State for reinstatement. *See* I.C. § 23–1–46–3.

Additionally, the court finds that a genuine issue of material fact exists with respect to the question of whether Levin's assignment to the Levin Trusts was a fraudulent conveyance, prohibited by I.C. § 32–2–1–14 (see footnote 3, *supra* ). Indiana law also provides that: "The question of fraudulent in-

**956**

tent, in all cases arising under the provisions of this chapter, shall be deemed a question of fact...." I.C. § 32–2–1–18.

SCA argues that the material facts illustrate that Levin's August 24, 1988 assignment to the Levin Trusts was in defraud of creditors and thus the assignment is void. SCA claims that the assignment manifests many "badges of fraud." Specifically, SCA claims that Levin had clear notice before the assignment that a claim would be made against it for clean-up costs associated with the Site as the assignment was made four years after the Site was publicly listed on the National Priorities List in 1984 and two years after Levin received a Section 104(e) request from the USEPA regarding the Site.

SCA further claims that Levin effectively maintained beneficial ownership over the property it transferred to the Levin Trusts because the trustees and beneficiaries of the Levin Trusts include Levin stockholders and directors. SCA contends that the assignment was a handoff between family members, rather than an arms-length transaction between strangers.

Levin argues that it did not have "clear notice" of a potential claim against it even though it did receive a Section 104(e) request. Levin further disputes SCA's claim that Levin maintained beneficial ownership over the property transferred to the Levin Trusts.

In a fraudulent conveyance action, the determination of how many badges of fraud exist and if together they amount to a pattern of fraudulent intent rests, in the first instance, with the trier of fact. *Johnson v. Estate of Rayburn*, 587 N.E.2d 182 (Ind.App. 1992). In the present case there is some evidence of the existence of "badges of fraud". Most prominent is the fact that Levin clearly had some notice that it would likely be held liable for clean-up costs at the Site. Levin was a co-owner of a large landfill that was being investigated by the USEPA as well as by state authorities. Levin then proceeded to secretly dissolve as a corporation and subsequently assigned a very large income stream to the Levin Trusts. These trusts were set up for the benefit of the Levin family, some of whom were prior offi-

cers/shareholders of the Levin corporation. Construing all reasonable inferences in favor of SCA, the non-moving party, the court finds that SCA has raised a material issue of fact that precludes the granting of summary judgment.

*Conclusion*

For all the foregoing reasons, Levin's motion for summary judgment is hereby DENIED.